**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| EDDIE BLOTNICKI, LARRY BRITT, TIA COLES, MIESHA DOBBS, COURTNEY DORAN, JULES FLETCHER, RACHEL HENDERSON, CAROLYN JOHNSTON, ANGELA KACHONIK, LAUREN LEATHERMAN, AMY MALCOLM, TATIANA MARQUEZ, KARA MILLER, MALIK NAUMAN, JOEY NGUYEN, CAITLIN PHILLIPS, LEILANI SHIMODA, AND HARRIS WRIGHT on behalf of herself and all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>Defendant. | CASE NO.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Eddie Blotnicki, Larry Britt, Tia Coles, Miesha Dobbs, Courtney Doran, Jules Fletcher, Rachel Henderson, Carolyn Johnston, Angela Kachonik, Lauren Leatherman, Amy Malcolm, Tatiana Marquez, Kara Miller, Malik Nauman, Joey Nguyen, Caitlin Phillips, Leilani Shimoda, and Harris Wright (collectively, "Plaintiffs"), individually and on behalf of all

CLASS ACTION COMPLAINT  - 1

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

similarly situated persons, allege the following against Microsoft Corporation. ("Defendant" or "Microsoft") based on personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation by Plaintiffs' counsel:

## INTRODUCTION

1.      This class action lawsuit arises from Microsoft's use of the Microsoft Shopping browser extension to poach commissions generated by online content creators and personalities who use affiliate links to generate and track online sales.

2.      Unlike most browser extensions, the Microsoft Shopping extension is pre-installed on Microsoft's Edge browser, which serves as the default web browser on all Windows computers. Microsoft Shopping is available for desktop and laptop computers and can also be accessed on mobile devices by downloading the Microsoft Edge or Microsoft Bing Search apps. Millions of users in the United States have activated the Microsoft Shopping browser extension while making online purchases.

3.      According to Microsoft, the Microsoft Shopping browser extension is a free tool that automatically searches the internet for coupons and discount codes. It also provides users with price comparison and price history features and includes a built-in "Microsoft Cashback" system, allowing shoppers to earn credits in their Microsoft Rewards account for eligible purchases. Microsoft claims that the extension has helped users save over $12.4 billion.

4.      Behind the scenes, however, the Microsoft Shopping browser extension operates in an entirely different manner. While pretending to be helpful to the consumer, the browser extension goes to work under the hood to replace any affiliate link tracking cookies with its own tracking cookie so it will appear to the merchant that Microsoft Shopping originated the sale. Microsoft Shopping then takes the commission, unbeknownst to the consumer, affiliate or vendor, depriving the affiliate of the fruits of their marketing efforts.

CLASS ACTION COMPLAINT  - 2

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

5.      This conduct has caused significant financial harm to Plaintiff Eddie Blotnicki, Larry Britt, Tia Coles, Miesha Dobbs, Courtney Doran, Jules Flecther, Rachel Henderson, Carolyn Johnston, Angela Kachonik, Lauren Leatherman, Amy Malcom, Taitiana Marquez, Kara Miller, Malik Nauman, Joey Nguyen, Caitlin Phillips, Leilani Shimoda, Harris Wright, and similarly situated individuals who rely on affiliate marketing for income.

## **THE PARTIES**

6.      Eddie Blotnicki resides in Minocqua, Wisconsin.

7.      Larry Britt resides in Fort Gray, West Viriginia.

8.      Tia Coles resides in Roanoke, VA

9.      Miesha Dobbs resides in Virginia Beach, VA

10.     Courtney Doran resides in Oakland, New Jersey.

11.     Jules Fletcher resides in Odessa, Texas.

12.     Rachel Henderson resides in Los Angeles, California.

13.     Carolyn Johnston resides in Kiln, Mississippi.

14.     Angela Kachonik resides in Homestead, PA.

15.     Lauren Leatherman resides in Keyser, West Virginia.

16.     Amy Malcolm resides in Peculiar, Missouri.

17.     Tatiana Marquez resides in Santa Ana, California.

18.     Kara Miller resides in Santa Maria, California.

19.     Malik Nauman resides in New Market, Maryland.

20.     Joey Nguyen resides in Prunedale, California.

21.     Caitlin Philips resides in Folsom, California.

22.     Leilani Shimoda resides in Los Angeles, California.

CLASS ACTION COMPLAINT  - 3

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

23.     Harris Wright resides in Seymour, Indiana.

24.     Microsoft Corporation ("Microsoft" or "Defendant") is a Washington corporation with a principal place of business at 1 Microsoft Way, Redmond in King County, Washington.

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because this is a class action with an amount in controversy exceeding $5,000,000, exclusive of interest and costs, and at least one class member is a citizen of a state different from Defendant. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because Microsoft maintains is headquarters and principal place of business in Washington.

26.     Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because Microsoft maintains its principal place of business in this District, Microsoft resides in this District, and substantial parts of the events or omissions giving rise to the claims occurred in or emanated from this District, including, without limitation, decisions made by Microsoft's governance and management personnel.

## COMMON FACTUAL ALLEGATIONS ABOUT DEFENDANT'S SCHEME

27.     Online affiliate marketing is a performance-based strategy in which businesses reward individuals or entities, known as affiliates, for driving traffic or sales to their products or services.

28.     Affiliates promote a company's offerings through various channels—such as blogs, social media, or websites—and earn a commission for each sale or action generated through their unique referral links provided by the businesses.

29.     This model benefits both parties: companies expand their reach without upfront

BRESKIN | JOHNSON | TOWNSEND PLLC
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

advertising costs, and affiliates monetize their platforms by promoting products and vendors relevant to their audience.

30.     In addition to the unique referral links, this system also relies on tracking cookies that attribute sales to the appropriate affiliate to determine who earns the commission. The most commonly employed model to determine who earns the commission for an online purchase is **"last-click" attribution**, which assigns 100% of the credit for a sale to the final touchpoint—the last affiliate link clicked by the consumer before making a purchase. This approach simplifies tracking and compensation, ensuring that the affiliate who directly influenced the final purchase decision is rewarded.

31.     The Microsoft Shopping browser extension comes pre-installed on its Microsoft Edge browser, which is the default internet browser on every Windows computer. Since it was launched in 2020, Microsoft has transformed the browser extension into a standalone product that can be integrated with competing web browsers, like Google Chrome, Firefox, and Safari.

32.     Microsoft encourages consumers to activate the Microsoft Shopping browser extension by offering features such as automatic coupon searches for items in their online cart, price-comparison and price history tools, and shopping rewards that allow users to earn cashback on online purchases. In some instances, it also misappropriates credits by suggesting to consumers that coupons might be available when, in reality, none are.

33.     Since all Windows computers, including desktop and laptop computers, come pre-loaded with Microsoft Edge, they automatically come pre-loaded with the Microsoft Shopping browser extension.

34.     Microsoft Edge is the third most commonly used web browser behind Google Chrome and Safari in the United States, giving the Microsoft Shopping browser extension a

CLASS ACTION COMPLAINT - 5

1  competitive edge, as it seamlessly reaches less tech savvy consumers who may be unfamiliar

2  with the concept of browser extensions.

3      35.    As a result, millions of people use Microsoft Shopping daily. Microsoft asserts

4  that it has saved shoppers over $12.4 billion, equating to an average of about $431 per shopper

5  annually.

6      27.    Microsoft exploits last-click attribution by triggering a Microsoft Shopping pop-up

7  at checkout for customers who have activated the browser extension. When a customer clicks on

8  the Microsoft Shopping link during checkout after previously clicking on an affiliate link,

9  Microsoft's affiliate cookie replaces the referring content creator's affiliate cookie.

10      28.    A comparison to a transaction without Microsoft Shopping highlights the issue.

11  Under normal circumstances, when a customer clicks on an affiliate link and then goes on to

12  complete a purchase without further interaction, the sale is correctly attributed to the originating

13  affiliate.

14      29.    In contrast, if the customer uses the Microsoft Shopping browser extension at

15  checkout after clicking on an affiliate link, Microsoft's tracking cookie is surreptitiously

16  swapped in for the originating affiliate link, and the transaction is attributed to Microsoft instead,

17  depriving the affiliate of credit for the sale.

18      30.    Notably, even when the Microsoft Shopping browser extension provides no

19  discount codes and provides no tangible benefit to the customer whatsoever, any click on its pop-

20  up during checkout ensures that it appears that Microsoft referred the customer, and Microsoft

21  accordingly receives credit – and commission – for the transaction.

22      31.    As a result of this interference, affiliate contributions to customer acquisition are

23  not properly tracked by their business partners. Microsoft's disruption of the last-click attribution

24

CLASS ACTION COMPLAINT  - 6

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

1    process undermines the ability of Plaintiffs and the Class to demonstrate their performance and

2    deprives them of commissions.

3        32.    Additionally, Microsoft's conduct also prevents Plaintiffs' and the Class's

4    business partners from accurately tracking the customers brought in through affiliate links,

5    knowingly allowing its Microsoft Shopping browser extension to claim credit for customer

6    acquisitions that should have been attributed to Plaintiffs and other content creators. In addition

7    to lost commissions, this also skews metrics that reflect affiliates' role in driving sales, which

8    impacts future business relationships with current and prospective business partners.

9        33.    These actions have harmed Plaintiffs' and the Class's relationships with their

10   business partners, resulting in diminished trust, less favorable contract terms, and, in some cases,

11   the non-renewal of contracts. Microsoft has unjustly benefited from these practices, receiving

12   credit for customer acquisitions at the expense of Plaintiffs and the Class, either through

13   commission payments or click attribution metrics.

14   **PLAINTIFFS' SUFFERED HARM AS A RESULT OF DEFENDANT'S SCHEME**

15   ***Eddie Blotnicki***

16       34.    Plaintiff Eddie Blotnicki is a content creator with a substantial social media

17   following, amassing approximately 11,400 followers on the online platform where he has a

18   presence. As a component of his creative posts, he promotes products on YouTube.

19       35.    In connection with these promotions, Plaintiff participates in various merchants'

20   affiliate advertising programs, incorporating affiliate links into his content. He earns

21   commissions when users make purchases through these links. In an average month, Plaintiff

22   receives about $45 in commissions.

23

24

CLASS ACTION COMPLAINT  - 7

36.    Until Microsoft's unlawful scheme was uncovered in December 2024, Plaintiff was unaware of the reason his commissions appeared lower than expected, despite his significant social media reach and high levels of audience engagement.

37.    On information and belief, a portion of Plaintiff's rightful affiliate commissions was improperly diverted from Plaintiff as a result of Microsoft's unlawful scheme.

38.    Had Microsoft not employed its Microsoft web browser extension to reroute his commissions, Plaintiff would have received additional earnings from his affiliate links.

***Larry Britt***

39.    Plaintiff Larry Britt resides in Fort Gay, West Virginia. He is a content creator with a substantial social media following, amassing approximately 13,000 followers on just one of the online platforms where he has a presence. As a component of his creative posts, he promotes products on TikTok.

40.    In connection with these promotions, Plaintiff participates in various retailers' affiliate advertising programs, incorporating affiliate links into his content. He earns commissions when users make purchases through these links. In an average month, Plaintiff receives about $150 in commissions.

41.    Until Microsoft's unlawful scheme was uncovered in December 2024, Plaintiff was unaware of the reason his commissions appeared lower than expected, despite his significant social media reach and high levels of audience engagement.

42.    On information and belief, a portion of Plaintiff's rightful affiliate commissions was improperly diverted from Plaintiff as a result of Microsoft's unlawful scheme.

43.    Had Microsoft not employed its Microsoft web browser extension to reroute his commissions, Plaintiff would have received additional earnings from his affiliate links.

CLASS ACTION COMPLAINT  - 8

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

*Tia Coles*

44.     Plaintiff Tia Coles resides in Roanoke, Virginia. She is a content creator with a substantial social media following, amassing approximately 1.8 million followers on TikTok where she has a presence. As a component of her creative posts, she promotes products on TikTok.

45.     In connection with these promotions, Plaintiff participates in various retailers' affiliate advertising programs, incorporating affiliate links into her content. She earns commissions when users make purchases through these links. In an average month, Plaintiff receives about $6,000 in commissions.

46.     Until Microsoft's unlawful scheme was uncovered in December 2024, Plaintiff was unaware of the reason her commissions appeared lower than expected, despite her significant social media reach and high levels of audience engagement.

47.     On information and belief, a portion of Plaintiff's rightful affiliate commissions was improperly diverted from Plaintiff as a result of Microsoft's unlawful scheme.

48.     Had Microsoft not employed its Microsoft web browser extension to reroute her commissions, Plaintiff would have received additional earnings from her affiliate links.

*Miesha Dobbs*

49.     Plaintiff Miesha Dobbs is a content creator with a substantial social media following, amassing approximately 6,100 followers on just one of the online platforms where she has a presence. As a component of her creative posts, she promotes products on Facebook, Instagram, and TikTok.

50.     In connection with these promotions, Plaintiff participates in various merchants' affiliate advertising programs, incorporating affiliate links into her content. She earns commissions when users make purchases through these links. In an average month, Plaintiff receives about $400 in commissions.

CLASS ACTION COMPLAINT - 9

51.     Until Microsoft's unlawful scheme was uncovered in December 2024, Plaintiff was unaware of the reason her commissions appeared lower than expected, despite her significant social media reach and high levels of audience engagement.

52.     On information and belief, a portion of Plaintiff's rightful affiliate commissions was improperly diverted from Plaintiff as a result of Microsoft's unlawful scheme.

53.     Had Microsoft not employed its Microsoft web browser extension to reroute her commissions, Plaintiff would have received additional earnings from his affiliate links.

***Courtney Doran***

54.     Plaintiff Courtney Doran is a content creator with a substantial social media following, amassing approximately 56,000 followers on just one of the online platforms where she has a presence. As a component of her creative posts, she promotes products on Facebook, Instagram, TikTok, X (Twitter), and YouTube.

55.     In connection with these promotions, Plaintiff participates in various merchants' affiliate advertising programs, incorporating affiliate links into her content. She earns commissions when users make purchases through these links. In an average month, Plaintiff receives about $10,000 in commissions.

56.     Until Microsoft's unlawful scheme was uncovered in December 2024, Plaintiff was unaware of the reason her commissions appeared lower than expected, despite her significant social media reach and high levels of audience engagement.

57.     On information and belief, a portion of Plaintiff's rightful affiliate commissions was improperly diverted from Plaintiff as a result of Microsoft's unlawful scheme.

58.     Had Microsoft not employed its Microsoft web browser extension to reroute her commissions, Plaintiff would have received additional earnings from his affiliate links.

CLASS ACTION COMPLAINT  - 10

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

*Jules Fletcher*

59.     Plaintiff Jules Fletcher is a content creator with a substantial social media following, amassing approximately 27,700 followers on just one of the online platforms where she has a presence. As a component of her creative posts, she promotes products on Facebook, Instagram, TikTok, X (Twitter) and YouTube.

60.     In connection with these promotions, Plaintiff participates in various merchants' affiliate advertising programs, incorporating affiliate links into her content. She earns commissions when users make purchases through these links. In an average month, Plaintiff receives about $800-$1,000 in commissions.

61.     Until Microsoft's unlawful scheme was uncovered in December 2024, Plaintiff was unaware of the reason her commissions appeared lower than expected, despite her significant social media reach and high levels of audience engagement.

62.     On information and belief, a portion of Plaintiff's rightful affiliate commissions was improperly diverted from Plaintiff as a result of Microsoft's unlawful scheme.

63.     Had Microsoft not employed its Microsoft web browser extension to reroute her commissions, Plaintiff would have received additional earnings from his affiliate links.

*Rachel Henderson*

64.     Plaintiff Rachel Henderson resides in Los Angeles, California. She is a content creator with a substantial social media following, amassing approximately 12,120 followers on Instagram where she has a presence. As a component of her creative posts, she promotes products on Instagram.

65.     In connection with these promotions, Plaintiff participates in various retailers' affiliate advertising programs, incorporating affiliate links into her content. She earns

BRESKIN | JOHNSON | TOWNSEND PLLC
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

commissions when users make purchases through these links. In an average month, Plaintiff receives about $250 in commissions.

66.     Until Microsoft's unlawful scheme was uncovered in December 2024, Plaintiff was unaware of the reason her commissions appeared lower than expected, despite her significant social media reach and high levels of audience engagement.

67.     On information and belief, a portion of Plaintiff's rightful affiliate commissions was improperly diverted from Plaintiff as a result of Microsoft's unlawful scheme.

68.     Had Microsoft not employed its Microsoft web browser extension to reroute her commissions, Plaintiff would have received additional earnings from his affiliate links.

***Carolyn Johnston***

69.     Plaintiff Carolyn Johnston is a content creator with a substantial social media following, amassing approximately 3,000 followers on just one of the online platforms where she has a presence. As a component of her creative posts, she promotes products on Facebook and TikTok.

70.     In connection with these promotions, Plaintiff participates in various merchants' affiliate advertising programs, incorporating affiliate links into her content. She earns commissions when users make purchases through these links. In an average month, Plaintiff receives substantial sums in commissions.

71.     Until Microsoft's unlawful scheme was uncovered in December 2024, Plaintiff was unaware of the reason her commissions appeared lower than expected, despite her significant social media reach and high levels of audience engagement.

72.     On information and belief, a portion of Plaintiff's rightful affiliate commissions was improperly diverted from Plaintiff as a result of Microsoft's unlawful scheme.

CLASS ACTION COMPLAINT  - 12

73.    Had Microsoft not employed its Microsoft web browser extension to reroute her commissions, Plaintiff would have received additional earnings from his affiliate links.

### Angela Kachonik

74.    Plaintiff Angela Kachonik is a content creator with a substantial social media following, amassing approximately 19,500 followers on just one of the online platforms where she has a presence. As a component of her creative posts, she promotes products on Facebook, Instagram, Substack, TikTok, Twitch and YouTube.

75.    In connection with these promotions, Plaintiff participates in various merchants' affiliate advertising programs, incorporating affiliate links into her content. She earns commissions when users make purchases through these links. In an average month, Plaintiff receives about $200 in commissions.

76.    Until Microsoft's unlawful scheme was uncovered in December 2024, Plaintiff was unaware of the reason her commissions appeared lower than expected, despite her significant social media reach and high levels of audience engagement.

77.    On information and belief, a portion of Plaintiff's rightful affiliate commissions was improperly diverted from Plaintiff as a result of Microsoft's unlawful scheme.

78.    Had Microsoft not employed its Microsoft web browser extension to reroute her commissions, Plaintiff would have received additional earnings from his affiliate links.

### Lauren Leatherman

79.    Plaintiff Lauren Leatherman is a content creator with a substantial social media following, amassing approximately 939,200 followers on just one of the online platforms where she has a presence. As a component of her creative posts, she promotes products on Facebook, Instagram and TikTok.

CLASS ACTION COMPLAINT  - 13

BRESKIN | JOHNSON | TOWNSEND PLLC
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

80.    In connection with these promotions, Plaintiff participates in various merchants' affiliate advertising programs, incorporating affiliate links into her content. She earns commissions when users make purchases through these links. In an average month, Plaintiff receives about $20 in commissions.

81.    Until Microsoft's unlawful scheme was uncovered in December 2024, Plaintiff was unaware of the reason her commissions appeared lower than expected, despite her significant social media reach and high levels of audience engagement.

82.    On information and belief, a portion of Plaintiff's rightful affiliate commissions was improperly diverted from Plaintiff as a result of Microsoft's unlawful scheme.

83.    Had Microsoft not employed its Microsoft web browser extension to reroute her commissions, Plaintiff would have received additional earnings from his affiliate links.

***Amy Malcolm***

84.    Plaintiff Amy Malcom is a content creator with a substantial social media following, amassing approximately 8,500 followers on just one of the online platforms where she has a presence. As a component of her creative posts, she promotes products on TikTok.

85.    In connection with these promotions, Plaintiff participates in various merchants' affiliate advertising programs, incorporating affiliate links into her content. She earns commissions when users make purchases through these links. In an average month, Plaintiff receives about $100 in commissions.

86.    Until Microsoft's unlawful scheme was uncovered in December 2024, Plaintiff was unaware of the reason her commissions appeared lower than expected, despite her significant social media reach and high levels of audience engagement.

CLASS ACTION COMPLAINT  - 14

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

87.    On information and belief, a portion of Plaintiff's rightful affiliate commissions was improperly diverted from Plaintiff as a result of Microsoft's unlawful scheme.

88.    Had Microsoft not employed its Microsoft web browser extension to reroute her commissions, Plaintiff would have received additional earnings from his affiliate links.

***Tatiana Marquez***

89.    Plaintiff Tatiana Marquez is a content creator with a substantial social media following, amassing approximately 6,840 followers on just one of the online platforms where she has a presence. As a component of her creative posts, she promotes products on Facebook, Instagram, and TikTok.

90.    In connection with these promotions, Plaintiff participates in various merchants' affiliate advertising programs, incorporating affiliate links into her content. She earns commissions when users make purchases through these links. In an average month, Plaintiff receives about $299 in commissions.

91.    Until Microsoft's unlawful scheme was uncovered in December 2024, Plaintiff was unaware of the reason her commissions appeared lower than expected, despite her significant social media reach and high levels of audience engagement.

92.    On information and belief, a portion of Plaintiff's rightful affiliate commissions was improperly diverted from Plaintiff as a result of Microsoft's unlawful scheme.

93.    Had Microsoft not employed its Microsoft web browser extension to reroute her commissions, Plaintiff would have received additional earnings from his affiliate links.

***Kara Miller***

94.    Plaintiff Kara Miller is a content creator with a substantial social media following,

CLASS ACTION COMPLAINT - 15

1  amassing approximately 10,800 followers on just one of the online platforms where she has a

2  presence. As a component of her creative posts, she promotes products on Facebook, Instagram,

3  Substack, TikTok, and X (Twitter).

4       95.    In connection with these promotions, Plaintiff participates in various merchants'

5  affiliate advertising programs, incorporating affiliate links into her content. She earns

6  commissions when users make purchases through these links. In an average month, Plaintiff

7  receives about $500 in commissions.

8       96.    Until Microsoft's unlawful scheme was uncovered in December 2024, Plaintiff

9  was unaware of the reason her commissions appeared lower than expected, despite her

10  significant social media reach and high levels of audience engagement.

11       97.    On information and belief, a portion of Plaintiff's rightful affiliate commissions

12  was improperly diverted from Plaintiff as a result of Microsoft's unlawful scheme.

13       98.    Had Microsoft not employed its Microsoft web browser extension to reroute her

14  commissions, Plaintiff would have received additional earnings from his affiliate links.

15  ***Malik Nauman***

16       99.    Plaintiff Malik Nauman resides in New Market, Maryland. He is a content creator

17  with a substantial social media following, amassing approximately 33.4k followers on TikTok

18  where he has a presence. As a component of his creative posts, he promotes products on TikTok.

19       100.    In connection with these promotions, Plaintiff participates in various retailers'

20  affiliate advertising programs, incorporating affiliate links into his content. He earns

21  commissions when users make purchases through these links. In an average month, Plaintiff

22  receives about $4,000-$5,000 in commissions.

23

24

CLASS ACTION COMPLAINT - 16

101.    Until Microsoft's unlawful scheme was uncovered in December 2024, Plaintiff was unaware of the reason his commissions appeared lower than expected, despite his significant social media reach and high levels of audience engagement.

102.    On information and belief, a portion of Plaintiff's rightful affiliate commissions was improperly diverted from Plaintiff as a result of Microsoft's unlawful scheme.

103.    Had Microsoft not employed its Microsoft web browser extension to reroute his commissions, Plaintiff would have received additional earnings from his affiliate links.

***Joey Nguyen***

104.    Plaintiff Joey Nguyen resides in Prunedale, California. He is a content creator with a substantial social media following, amassing approximately 29k followers on Instagram where he has a presence. As a component of his creative posts, he promotes products on Instagram.

105.    In connection with these promotions, Plaintiff participates in various retailers' affiliate advertising programs, incorporating affiliate links into his content. He earns commissions when users make purchases through these links. In an average month, Plaintiff receives about $500 in commissions.

106.    Until Microsoft's unlawful scheme was uncovered in December 2024, Plaintiff was unaware of the reason his commissions appeared lower than expected, despite his significant social media reach and high levels of audience engagement.

107.    On information and belief, a portion of Plaintiff's rightful affiliate commissions was improperly diverted from Plaintiff as a result of Microsoft's unlawful scheme.

108.    Had Microsoft not employed its Microsoft web browser extension to reroute his commissions, Plaintiff would have received additional earnings from his affiliate links.

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

*Caitlin Phillips*

109.    Plaintiff Caitlin Phillips resides in Folsom, California. She is a content creator with a substantial social media following, amassing approximately 21,000 followers on YouTube where she has a presence. As a component of her creative posts, she promotes products on YouTube.

110.    In connection with these promotions, Plaintiff participates in various retailers' affiliate advertising programs, incorporating affiliate links into her content. She earns commissions when users make purchases through these links. In an average month, Plaintiff receives about $50 in commissions.

111.    Until Microsoft Shopping's unlawful scheme was uncovered in December 2024, Plaintiff was unaware of the reason her commissions appeared lower than expected, despite her significant social media reach and high levels of audience engagement.

112.    On information and belief, a portion of Plaintiff's rightful affiliate commissions was improperly diverted from Plaintiff as a result of Microsoft's unlawful scheme.

113.    Had Microsoft not employed its Microsoft Shopping web browser extension to reroute her commissions, Plaintiff would have received additional earnings from her affiliate links.

*Leilani Shimoda*

114.    Plaintiff Leilani Shimoda is a content creator with a substantial social media following, amassing approximately 45,000 followers on just one of the online platforms where she has a presence. As a component of her creative posts, she promotes products on Instagram, Facebook and TikTok.

115.    In connection with these promotions, Plaintiff participates in various merchants'

CLASS ACTION COMPLAINT  - 18

BRESKIN | JOHNSON | TOWNSEND PLLC
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

affiliate advertising programs, incorporating affiliate links into her content. She earns commissions when users make purchases through these links. In an average month, Plaintiff receives about $2,000 in commissions.

116.    Until Microsoft's unlawful scheme was uncovered in December 2024, Plaintiff was unaware of the reason her commissions appeared lower than expected, despite her significant social media reach and high levels of audience engagement.

117.    On information and belief, a portion of Plaintiff's rightful affiliate commissions was improperly diverted from Plaintiff as a result of Microsoft's unlawful scheme.

118.    Had Microsoft not employed its Microsoft web browser extension to reroute her commissions, Plaintiff would have received additional earnings from his affiliate links.

***Harris Wright***

119.    Plaintiff Harris Wright resides in Seymour, Indiana. He is a content creator with a substantial social media following, amassing approximately 14,000 followers on just one of the online platforms where he has a presence. As a component of his creative posts, he promotes products on TikTok.

120.    In connection with these promotions, Plaintiff participates in various retailers' affiliate advertising programs, incorporating affiliate links into his content. He earns commissions when users make purchases through these links. In an average month, Plaintiff receives about $500 in commissions.

121.    Until Microsoft's unlawful scheme was uncovered in December 2024, Plaintiff was unaware of the reason his commissions appeared lower than expected, despite his significant social media reach and high levels of audience engagement.

BRESKIN | JOHNSON | TOWNSEND PLLC
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

122.    On information and belief, a portion of Plaintiff's rightful affiliate commissions was improperly diverted from Plaintiff as a result of Microsoft's unlawful scheme.

123.    Had Microsoft not employed its Microsoft web browser extension to reroute his commissions, Plaintiff would have received additional earnings from his affiliate links.

## CLASS ACTION ALLEGATIONS

124.    Plaintiffs, on behalf of themselves and as a class action under the Federal Rules of Civil Procedure, Rule 23(a), (b)(1), (b)(2), (b)(3), and (c)(4), seek damages and injunctive relief on behalf of the members of the following Class and constituent Subclasses (collectively, the "Class"):

**Nationwide Class:** All persons in the United States who participated in an affiliate commission program with a United States online merchant and had commissions diverted to Microsoft as a result of the Microsoft Shopping browser extension.

**California Subclass:** All members of the Class who reside in California.

**Indiana Subclass:** All members of the Class who reside in Indiana.

**Maryland Subclass:** All members of the Class who reside in Maryland.

**Mississippi Subclass:** All members of the Class who reside in Mississippi.

**Missouri Subclass:** All members of the Class who reside in Missouri.

**New Jersey Subclass:** All members of the Class who reside in New Jersey.

**Pennsylvania Subclass:** All members of the Class who reside in Pennsylvania.

**Texas Subclass:** All members of the Class who reside in Texas.

**Virginia Subclass:** All members of the Class who reside in

BRESKIN | JOHNSON | TOWNSEND PLLC
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

Virginia.

**West Virginia:** All members of the Class who reside in West Virginia.

**Wisconsin Subclass:** All members of the Class who reside in Wisconsin.

125.    The California, Indiana, Maryland, Mississippi, Missouri, New Jersey, Pennsylvania, Texas, Virginia, West Virginia, and Wisconsin Subclasses are referred to hereinafter collectively as "the State Subclasses."

126.    Excluded from the Class are the Defendant and their officers, directors, management, employees, subsidiaries, or affiliates. Also excluded are the district judge or magistrate judge to whom this case is assigned, as well as those judges' immediate family members, judicial officers and their personnel, and all governmental entities.

127.    **Numerosity:** Members of the Class are so numerous that joinder is impracticable. There are at least tens of thousands of members of the Class, geographically dispersed throughout the United States, such that joinder of all Class Members is impracticable. There are at least thousands of members of each Subclass, such that joinder of all Subclass Members is similarly impracticable.

128.    **Typicality:** Plaintiffs' claims are typical of the claims of the other Class Members. The factual and legal bases of Defendant's liability are the same and resulted in injury to Plaintiffs and all other members of the Class.

129.    **Adequate representation:** Plaintiffs will represent and protect the interests of the Class both fairly and adequately. They have retained counsel competent and experienced in complex class-action litigation. Plaintiffs have no interests that are antagonistic to those of the Class, and their interests do not conflict with the interests of the Class Members whom they seek to represent.

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

130.    **Commonality and Predominance:** Questions of law and fact common to the members of the Class predominate over questions that may affect only individual Class Members because Defendant has acted on grounds generally applicable to the Class and because Class Members share a common injury. Thus, determining damages with respect to the Class as a whole is appropriate. The common applicability of the relevant facts to claims of Plaintiffs and the proposed Class are inherent in Defendant's wrongful conduct because the injuries incurred by Plaintiffs and each member of the Class arose from the same conduct alleged herein.

131.    There are common questions of law and fact specific to the Class that predominate over any questions affecting individual members, including:

    a.    Whether Defendant programmed and designed the Microsoft Shopping browser extension in a manner that wrongfully credits Microsoft as the originator of sales referrals;

    b.    Whether the scheme described herein results in Microsoft being awarded commission payments that it did not rightfully earn;

    c.    Whether Microsoft was unjustly enriched to the detriment of Plaintiffs in the form of commission payments;

    d.    Whether consumers and Class Members have been damaged by Defendant's conduct; and

    e.    The nature and scope of appropriate injunctive relief.

132.    **Superiority:** Class proceedings on these facts are superior to all other available methods for the fair and efficient adjudication of this controversy, given that joinder of all members is impracticable. Even if members of the Class could sustain individual litigation, that course would not be preferable to a class action because individual litigation would increase the

CLASS ACTION COMPLAINT  - 22

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

1  delay and expense to the parties due to the complex factual and legal controversies present in this

2  matter. Here, the class action device will present far fewer management difficulties, and it will

3  provide the benefit of a single adjudication, economies of scale, and comprehensive supervision

4  by this Court. Further, uniformity of decisions will be ensured.

5      133.    Class certification is also appropriate under Rules 23(b)(1), (b)(2), and/or (c)(4)

6  because:

7      •    The prosecution of separate actions by the individual members of the Class

8  would create a risk of inconsistent or varying adjudications establishing incompatible standards

9  of conduct for Defendant;

10     •    The prosecution of separate actions by individual Class Members would create a

11  risk of adjudications that would, as a practical matter, be dispositive of the interests of other

12  Class Members not parties to the adjudications, or would substantially impair or impede their

13  ability to protect their interests;

14     •    Defendant has acted or refused to act on grounds generally applicable to the

15  Class, making injunctive and corresponding declaratory relief appropriate with respect to the

16  Class as a whole; and

17     •    The claims of Class Members are comprised of common issues whose resolution

18  in a class trial would materially advance this litigation.

### TOLLING OF THE STATUTE OF LIMITATIONS

20     134.    All relevant statutes of limitations have been tolled due to Microsoft's intentional

21  and active concealment of the facts outlined in this complaint. Plaintiffs and the Class could not

22  have reasonably discovered Microsoft's practice of covertly manipulating network transmissions

CLASS ACTION COMPLAINT  - 23

1  to allow the Microsoft Shopping browser extension to claim sales commissions it did not

2  legitimately earn.

3      135.    Microsoft has had, and continues to have, a duty to disclose to Plaintiffs and the

4  Class its practice of replacing tracking tags that identify online marketers as the source of

5  referrals with its own tracking tags, thereby diverting commissions rightfully owed to online

6  marketers like Plaintiffs and the Class. Due to Microsoft's active concealment of this conduct, all

7  applicable statutes of limitations related to these allegations have been tolled.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (ON BEHALF OF THE CLASS)

11      136.    Plaintiffs re-allege and incorporate by reference all factual allegations above as if

12  fully set forth herein.

13      137.    Plaintiffs and Class Members are engaged in an economic relationship with online

14  merchants by referring their followers to those merchants through affiliate links. In return, online

15  merchants provide Plaintiffs and Class Members with referral fees or commissions. These

16  relationships are ongoing, and Plaintiffs and Class Members expect to continue earning

17  commissions in exchange for referrals.

18      138.    Microsoft is aware of the referral and commission relationship between Plaintiffs

19  and Class Members, on the one hand, and online merchants, on the other hand.

20      139.    By utilizing the Microsoft Shopping browser extension, Microsoft wrongfully

21  intercepts commission payments owed to Plaintiffs and Class Members who promoted and

22  shared an affiliate link, directly facilitating the referral and subsequent sale of an online

23  merchant's product of service. Specifically, Microsoft displaces tracking tags that identify

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

creators as the source of the referral, substitutes its own tracking tags, and holds itself out as the

referrer of the specific products and/or services even though the sale in question emanated from a

creator's affiliate marketing link.

140.    Microsoft either intended to usurp commissions from Plaintiffs and Class

Members through the conduct alleged herein or knew that its conduct would appropriate

commissions and referral fees.

141.    Plaintiffs and Class Members were harmed by Microsoft's conduct because the

Microsoft Shopping browser extension deprives Plaintiffs and Class Members of monies that

they rightfully earned as the true originators of sales arising from their affiliate marketing links.

142.    Microsoft's conduct was a substantial factor in causing harm to Plaintiffs and

Subclass Members in that, among other things, they suffered economic injury through

deprivation of commissions they should have earned from referrals through their affiliate links.

143.    As a result of the above conduct, Microsoft is liable to Plaintiffs and Class

Members for damages in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**
**(ON BEHALF OF THE CLASS)**

144.    Plaintiffs re-allege and incorporate by reference all factual allegations above as if

fully set forth herein.

145.    Plaintiffs and Class Members have ongoing, valid, and enforceable contractual

agreements with online merchants to promote products and services in exchange for

commissions.

146.    Microsoft knew that online merchants have these ongoing contractual

relationships with Plaintiffs and Class Members, under which Plaintiffs and Class Members

receive commissions from online merchants via affiliate links under a last-click-attribution

CLASS ACTION COMPLAINT - 25

1  model.

2      147.    Microsoft intentionally disrupted this contractual relationship by intentionally

3  replacing the affiliate codes associated with Plaintiffs' and Class Members' affiliate links with

4  tracking codes associated with The Microsoft Shopping browser extension.

5      148.    Because Plaintiffs and Class Members were deprived of their rightfully earned

6  commissions, they sustained harm and economic injury as a direct and proximate result of

7  Microsoft's tortious interference with contractual relations. Plaintiffs and Class Members

8  accordingly seek damages in an amount to be proven at trial, as well as injunctive relief barring

9  further interference.

10                    **THIRD CAUSE OF ACTION**
                      **UNJUST ENRICHMENT**
11                    **(ON BEHALF OF THE CLASS)**

12      149.    Plaintiffs re-allege and incorporate by reference all factual allegations above as if

13  fully set forth herein.

14      150.    Plaintiffs lack an adequate remedy at law.

15      151.    Plaintiffs and Class Members have an interest, both equitable and legal, in the

16  referral fees and commission payments to which they were wrongfully deprived. These payments

17  were rightfully earned by Plaintiffs and Class Members, not Microsoft.

18      152.    Microsoft benefitted from the referral fees and commission payments that were

19  credited to it as a function of the Microsoft Shopping browser extension wrongfully claiming

20  credit for commissions via last-click attribution.

21      153.    Microsoft understood that it so benefitted, and it also understood and appreciated

22  that Microsoft Shopping browser extension would cause the harm described herein.

23      154.    But for Microsoft's unjust and improper use of the browser extension, it would

24

CLASS ACTION COMPLAINT - 26                    **BRESKIN | JOHNSON | TOWNSEND PLLC**
                                               600 Stewart St., Suite 901
                                               Seattle, WA 98101 Tel: 206-652-8660

1  not have been credited and awarded commission on sales that emanated from Plaintiffs' and

2  Class Members' respective affiliate marketing links.

3      155.    As a result of Microsoft's wrongful conduct as alleged in this Complaint, it has

4  been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and Class Members.

5      156.    Microsoft continues to benefit and profit from the browser extension while

6  Plaintiffs and Class Members continue to have their rightful commission payments diverted to

7  Microsoft.

8      157.    Microsoft's unjust enrichment is traceable to, and resulted directly and

9  proximately from, the conduct alleged herein, including by using the Microsoft Shopping

10  browser extension to wrongfully credit itself with referrals and commissions it did not rightfully

11  earn.

12      158.    The benefit conferred upon, received, and enjoyed by Microsoft was not

13  conferred officiously or gratuitously, and it would be inequitable and unjust for Microsoft to

14  retain the benefit.

15      159.    Equity and good conscience militate against permitting Microsoft to retain the

16  profits and benefits from its wrongful conduct, which should be restored to Plaintiffs and Class

17  Members.

18                    **FOURTH CAUSE OF ACTION**
                            **CONVERSION**
19                        **(ON BEHALF OF THE CLASS)**

20      160.    Plaintiffs re-allege and incorporate by reference all factual allegations above as if

21  fully set forth herein.

22      161.    Plaintiffs and Class Members possessed or had a right to possess commissions

23  they earned from referring consumers to products and services sold by online merchants. The

24

CLASS ACTION COMPLAINT  - 27                    **BRESKIN | JOHNSON | TOWNSEND PLLC**
                                                          600 Stewart St., Suite 901
                                                      Seattle, WA 98101 Tel: 206-652-8660

1    amount of each commission is a specific and identifiable sum.

2        162.    Microsoft intentionally and substantially interfered with Plaintiffs' and Class

3    Members' personal property by usurping commissions and referral fees owed to Plaintiffs and

4    Class Members.

5        163.    Microsoft, without proper authorization, assumed and exercised the right of

6    ownership over these commissions, in hostility to the rights of Plaintiffs and Class Members,

7    without justification.

8        164.    Microsoft's wrongful exercise of control over Plaintiffs' and Class Members'

9    personal property constitutes conversion.

10        165.    Plaintiffs and Class Members neither assented to nor ratified Microsoft's

11    interference with their commissions.

12        166.    As a direct and proximate result of Microsoft's conversion, Plaintiffs and Class

13    Members were harmed.

14        167.    Microsoft is liable to Plaintiffs and Class Members for damages and costs

15    permitted by law.

16                    **FIFTH CAUSE OF ACTION**
         **VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT**
17                    **18 U.S.C. §§ 1030,** *ET SEQ.*
                    **(ON BEHALF OF THE CLASS)**
18

19        168.    Plaintiffs re-allege and incorporate by reference all factual allegations above as if

20    fully set forth herein.

21        169.    The Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, makes it

22    unlawful for anyone to "knowingly and with intent to defraud, access[] a protected computer

23    without authorization, or exceed[] authorized access, and by means of such conduct further[] the

24    intended fraud and obtain[] anything of value, unless the object of the fraud and the thing

CLASS ACTION COMPLAINT  - 28              **BRESKIN | JOHNSON | TOWNSEND PLLC**
                                          600 Stewart St., Suite 901
                                          Seattle, WA 98101 Tel: 206-652-8660

1    obtained consists only of the use of the computer and the value of such use is not more than

2    $5,000 in any 1-year period." 18 U.S.C. § 1030(a)(4).

3        170.    Through its browser extension, Microsoft, knowingly and with intent to defraud,

4    exceeded its authorized access to the browsers and computers of consumers that downloaded its

5    browser extension, and through this conduct furthered its deceitful scheme to wrongfully obtain

6    the affiliate commissions of Plaintiffs and Class Members.

7        171.    Microsoft exceeded its authorized access to the computers of its consumers by

8    altering or removing affiliate cookies that Microsoft was not entitled to alter or remove. Cookie-

9    contaminating extensions, like Microsoft Shopping, are considered "malicious code" that alter

10    cookies they are not authorized to alter. Microsoft exceeded its authorized access by exploiting

11    vulnerabilities in the restrictions placed on browser extensions and by exploiting vulnerabilities

12    in the restrictions put in place by affiliate networks to prevent cookie stuffing.

13        172.    As described above, when a consumer activates the Microsoft Shopping browser

14    extension, Microsoft surreptitiously opens a new browser tab in the background to avoid

15    detection by the consumer. Microsoft Shopping then artificially mimics a genuine click on an

16    affiliate marketing link associated with its own affiliate marketing account in this hidden browser

17    tab, causing the online merchant's website to replace the affiliate cookies of Plaintiffs and the

18    Class with The Microsoft Shopping browser extension's affiliate cookie.

19        173.    This sophisticated technique is designed to exploit vulnerabilities in the

20    restrictions placed on browser extensions and in the technical restrictions put in place by affiliate

21    networks to allow Microsoft Shopping to artificially "trick" the consumer's browser and the

22    online merchant's website into replacing the legitimate affiliate cookies of Plaintiffs and Class

23    Members with the illegitimate affiliate cookies of Microsoft Shopping.

24

CLASS ACTION COMPLAINT  - 29

174.    Consumers of The Microsoft Shopping browser extension do not expect the Microsoft Shopping  extension to operate in this manner or to alter this data, and the extension's cookie-stuffing functionality is not disclosed in the applicable terms of service or privacy policy, or in any information that is disclosed to consumers who install the extension in the ordinary course.

175.    Microsoft Shopping 's malicious code is executed in the browsers of computers that are used in or affect interstate commerce, and thus meet the definition of "protected computer" under the CFAA.

176.    Microsoft's substitution of its own affiliate cookies for the affiliate cookies of Plaintiffs and Class Members impairs the integrity and availability of the data contained in the original affiliate cookies designating Plaintiffs and Class Members as the proper party to receive an affiliate commission. As a result of Microsoft's unlawful scheme, Plaintiffs and Class Members have lost substantial revenue from these highly valuable commissions that were improperly diverted to Microsoft. Thus, Plaintiffs and Class Members have suffered damage and loss well in excess of $5,000 during a year within the relevant period as a result of Microsoft's conduct.

177.    Plaintiffs and the Class seek compensatory damages, injunctive relief, and all other legal or equitable relief available under the CFAA.

**SIXTH CAUSE OF ACTION**
**CALIFORNIA COMPREHENSIVE COMPUTER DATA ACCESS & FRAUD ACT**
**CAL. PENAL CODE § 502**
**(ON BEHALF OF PLAINTIFFS HENDERSON, MARQUEZ, MILLER, NGUYEN,**
**PHILLIPS, SHIMODA, AND THE CALIFORNIA SUBCLASS)**

178.    Plaintiffs Henderson, Marquez, Miller, Nguyen, Phillips, and Shimoda, re-allege and incorporate by reference all factual allegations above as if fully set forth herein.

CLASS ACTION COMPLAINT  - 30

179.    Under the California Comprehensive Computer Data Access & Fraud Act (CDAFA), Cal. Penal Code § 502, a person or entity is liable under the statute if it:

> (1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data. . . .
>
> (4) Knowingly accesses and without permission adds, alters, damages, deletes, or destroys any data, computer software, or computer programs which reside or exist internal or external to a computer, computer system, or computer network. . . .
>
> (8) Knowingly introduces any computer contaminant into any computer, computer system, or computer network.

180.    Microsoft has deployed its browser extension to knowingly access and without permission alter, damage, delete, and/or destroy the affiliate cookie data of Plaintiffs and California Subclass Members, in order to both (a) execute its unlawful and deceitful scheme and (b) wrongfully control or obtain money, property, or data by diverting the affiliate commissions that rightfully belong to Plaintiffs and California Subclass Members.

181.    Microsoft has deployed its browser extension to knowingly access and without permission add, alter, damage, delete, and/or destroy the affiliate cookie data of Plaintiffs and California Subclass Members, which resides on a covered computer system. Under CDAFA, a "computer contaminant" is "any set of computer instructions that are designed to modify, damage, destroy, record, or transmit information within a computer, computer system, or computer network without the intent or permission of the owner of the information." Cal. Penal Code § 502(b)(12).

CLASS ACTION COMPLAINT  - 31

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

182.    Plaintiffs and California Subclass Members have an ownership interest in the affiliate cookie data that the Microsoft Shopping  extension has unlawfully modified, damaged, and/or destroyed. The extension is programmed with computer instructions that are designed to modify, damage, and/or destroy the affiliate cookie data of Plaintiffs and California Subclass Members without their intent or permission, thus meeting the definition of "computer contaminant" under CDAFA. Microsoft knowingly introduces this computer contaminant into consumers' computers through its browser extension, in direction violation of CDAFA.

183.    Microsoft neither sought nor obtained permission from (a) consumers of its browser extension, (b) Plaintiffs, or (c) California Subclass Members to add, alter, damage, delete, or destroy the affiliate cookie data of Plaintiffs and California Subclass Members residing on consumers' browsers. Likewise, Microsoft did not request or receive permission to Plaintiffs' and California Subclass' members' rightful affiliate commissions for its own benefit.

184.    The Microsoft Shopping browser extension's cookie-contaminating mechanism is not disclosed in the applicable terms of service or privacy policy, or in any information provided to consumers in the ordinary course of installing the extension.

185.    As a direct result of Microsoft's unlawful scheme, Plaintiffs and California Subclass Members have suffered significant financial losses, including substantial revenue from highly valuable commissions that were improperly diverted to Microsoft.

186.    Plaintiffs and California Subclass Members seek compensatory damages, injunctive relief, and all other legal or equitable relief available under the CDAFA.

187.    Because Microsoft's conduct is willful and deceitful, Plaintiffs and California Subclass Members seek punitive or exemplary damages, as available under CDAFA. Microsoft concealed the material fact that it was diverting affiliate commissions from creators to itself,

BRESKIN | JOHNSON | TOWNSEND PLLC
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

depriving Plaintiffs and California Subclass Members of substantial commissions.

**SEVENTH CAUSE OF ACTION**
**INDIANA COMPUTER CRIMES ACT**
**BURNS IND. CODE § 35-43-1-8**
**(ON BEHALF OF PLAINTIFF WRIGHT AND THE INDIANA SUBCLASS)**

188.    Plaintiff Wright re-alleges and incorporates by reference all factual allegations above as if fully set forth herein.

189.    Under the Indiana Computer Crimes Act, Burns Ind. Code § 35-43-1-8, a person or entity is liable under the statute if it knowingly or intentionally and without authorization:

> (1)    disrupts, denies, or causes the disruption or denial of computer system services to an authorized user of the computer system services that are:
>
>> (A) owned by; . . . .
>>
>>   or
>>
>> (C) operated for, on behalf of, or in conjunction with;
>>
>> another person in whole or part; . . .
>
> (3)    destroys or damages a computer, computer system, or computer network; or
>
> (4)    introduces a computer contaminant into a computer, computer system, or computer network;

190.    Microsoft has deployed its browser extension to knowingly access and without permission disrupt, deny, damage, delete, and/or destroy the affiliate cookie data of Plaintiff Wright and Indiana Subclass Members, in order to both (a) execute its unlawful and deceitful scheme and (b) wrongfully control or obtain money, property, or data by diverting the affiliate commissions that rightfully belong to Plaintiff Wright and Indiana Subclass Members.

191.    Microsoft has deployed its browser extension to knowingly access and without

CLASS ACTION COMPLAINT  - 33

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

permission add, alter, damage, delete, and/or destroy the affiliate cookie data of Plaintiff Wright

and Indiana Subclass Members, which resides on a covered computer system. Under the Indiana

Computer Crimes Act, a "computer contaminant" is "set of computer instructions designed

to modify, damage, destroy, record, or transmit information within a computer, computer system,

or computer network without the intent or permission of the owner of the information." Burns

Ind. Code § 35-31.5-2-52.7.

192.    Plaintiff Wright and Indiana Subclass Members have an ownership interest in the

affiliate cookie data that the Microsoft Shopping browser extension has unlawfully modified,

damaged, and/or destroyed. The extension is programmed with computer instructions that are

designed to modify, damage, and/or destroy the affiliate cookie data of Plaintiff Wright and

Indiana Subclass Members without their intent or permission, thus meeting the definition of

"computer contaminant" under the Indiana Computer Crimes Act. Microsoft knowingly

introduces this computer contaminant into consumers' computers through its browser extension,

in direction violation of the Indiana Computer Crimes Act.

193.    Microsoft neither sought nor obtained permission from (a) consumers of its

browser extension, (b) Plaintiff Wright, or (c) Indiana Subclass Members to add, alter, damage,

delete, or destroy the affiliate cookie data of Plaintiff Wright and Indiana Subclass Members

residing on consumers' browsers. Likewise, Microsoft did not request or receive permission to

Plaintiff Wright's and Indiana Subclass' members' rightful affiliate commissions for its own

benefit.

194.    The Microsoft Shopping browser extension's cookie-contaminating mechanism is

not disclosed in the applicable terms of service or privacy policy, or in any information provided

to consumers in the ordinary course of installing the extension.

CLASS ACTION COMPLAINT  - 34

195.    As a direct result of Microsoft's unlawful scheme, Plaintiff Wright and Indiana Subclass Members have suffered significant financial losses, including substantial revenue from highly valuable commissions that were improperly diverted to Microsoft.

196.    Plaintiff Wright and Indiana Subclass Members seek compensatory damages, injunctive relief, and all other legal or equitable relief available under the Indiana Computer Crimes Act.

197.    Because Microsoft's conduct is willful and deceitful, Plaintiff Wright and Indiana Subclass Members seek punitive or exemplary damages, as available under the Indiana Computer Crimes Act. Microsoft concealed the material fact that it was diverting affiliate commissions from creators to itself, depriving Plaintiff Wright and Indiana Subclass Members of substantial commissions.

**EIGHTH CAUSE OF ACTION**
**MARYLAND COMPUTER CRIME LAW**
**MD. CRIMINAL LAW CODE § 7-302**
**(ON BEHALF OF PLAINTIFF NAUMAN)**

198.    Plaintiff Nauman re-alleges and incorporates by reference all factual allegations above as if fully set forth herein.

199.    Under the Maryland Criminal Law Code, Md. Code § 7-302:

(c)(1) A person may not intentionally, willfully, and without authorization:

(i) access, attempt to access, cause to be accessed, or exceed the person's authorized access to all or part of a computer network, computer control language, computer, computer software, computer system, computer service, or computer database. . . .

(2) A person may not commit an act prohibited by paragraph (1) of this subsection with the intent to: . . .

CLASS ACTION COMPLAINT  - 35

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

1

(ii) alter, damage, or destroy all or any part of data or a computer program

2

stored, maintained, or produced by a computer, computer network,

3

computer software, computer system, computer service, or computer

4

database.

5    200.    Microsoft has deployed its browser extension to access the affiliate cookie data on

6    Plaintiff Nauman's and Maryland Subclass' members' computers by diverting the affiliate

7    commissions that rightfully belong to Plaintiff Nauman and Maryland Subclass Members.

8    201.    Microsoft has deployed its browser extension to access and the affiliate cookie

9    data on Plaintiff Nauman's and Maryland Subclass' members' computers and obtain affiliate

10    commissions which is the rightful property of Plaintiff Nauman and Maryland Subclass'

11    members by means of false or fraudulent conduct, practices or representations, and/or through

12    the false or fraudulent alteration, deletion or insertion of programs or data.

13    202.    Microsoft has inserted or attached or knowingly created the opportunity for an

14    unknowing and unwanted insertion or attachment of a set of instructions or a computer program,

15    in the form of its browser extension, into Plaintiff Nauman's and Maryland Subclass' members'

16    computer systems, with an intention to acquire, alter, damage, delete, disrupt, or destroy affiliate

17    cookie data and commissions that are the rightful property of Plaintiff Nauman's and Maryland

18    Subclass Members.

19    203.    Plaintiff Nauman and Maryland Subclass Members have an ownership interest in

20    the affiliate cookie data that the Microsoft Shopping browser extension has unlawfully acquired,

21    altered, damaged, deleted, disrupted, and/or destroyed. The extension is programmed with

22    computer instructions that are designed to acquire, alter, damage, delete, disrupt, or destroy the

23    affiliate cookie data of Plaintiff Nauman and Maryland Subclass Members without their

24

CLASS ACTION COMPLAINT  - 36

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

1   authorization, in direction violation of the Maryland Computer Crime Law.

2       204.   Microsoft neither sought nor obtained permission from (a) consumers of its

3   browser extension, (b) Plaintiff Nauman, or (c) Maryland Subclass Members to add, alter,

4   damage, delete, or destroy the affiliate cookie data of Plaintiff Nauman and Maryland Subclass

5   Members residing on consumers' browsers. Likewise, Microsoft did not request or receive

6   permission to Plaintiff Nauman's and Maryland Subclass' members' rightful affiliate

7   commissions for its own benefit.

8       205.   The Microsoft Shopping browser extension cookie-contaminating mechanism is

9   not disclosed in the applicable terms of service or privacy policy, or in any information provided

10  to consumers in the ordinary course of installing the extension.

11      206.   As a direct result of Microsoft's unlawful scheme, Plaintiff Nauman and

12  Maryland Subclass Members have suffered significant financial losses, including substantial

13  revenue from highly valuable commissions that were improperly diverted to Microsoft.

14      207.   Plaintiff Nauman and Maryland Subclass Members seek compensatory damages,

15  injunctive relief, and all other legal or equitable relief available under the Maryland Computer

16  Crime Law.

17      208.   Because Microsoft's conduct is willful and deceitful, Plaintiff Nauman and

18  Maryland Subclass Members seek punitive or exemplary damages, as available under Maryland

19  Computer Crime Law. Microsoft concealed the material fact that it was diverting affiliate

20  commissions from creators to itself, depriving Plaintiff Nauman and Maryland Subclass

21  Members of substantial commissions.

22  

**NINTH CAUSE OF ACTION**
**MISSISSIPPI COMPUTER CRIMES AND IDENTITY THEFT ACT**
**MISS. CODE § 97-45-3**
**(ON BEHALF OF PLAINTIFF JOHNSTON AND THE MISSISSIPPI SUBCLASS)**

CLASS ACTION COMPLAINT - 37

209.    Plaintiff Johnston re-alleges and incorporates by reference all factual allegations above as if fully set forth herein.

210.    Under the Mississippi Computer Crimes and Identity Theft Act, Miss. Code § 97-45-3:

> (1) Computer fraud is the accessing or causing to be accessed of any computer, computer system, computer network or any part thereof with the intent to:
>
> > (a) Defraud;
> >
> > (b) Obtain money, property or services by means of false or fraudulent conduct, practices or representations; or through the false or fraudulent alteration, deletion or insertion of programs or data; or
> >
> > (c) Insert or attach or knowingly create the opportunity for an unknowing and unwanted insertion or attachment of a set of instructions or a computer program into a computer program, computer, computer system, or computer network, that is intended to acquire, alter, damage, delete, disrupt, or destroy property or otherwise use the services of a computer program, computer, computer system or computer network.

211.    Microsoft has deployed its browser extension to access the affiliate cookie data on Plaintiff Johnston's and Mississippi Subclass' members' computers by diverting the affiliate commissions that rightfully belong to Plaintiff Johnston and Mississippi Subclass Members.

212.    Microsoft has deployed its browser extension to access and the affiliate cookie data on Plaintiff Johnston's and Mississippi Subclass' members' computers and obtain affiliate commissions which is the rightful property of Plaintiff Johnston and Mississippi Subclass'

CLASS ACTION COMPLAINT  - 38

1    members by means of false or fraudulent conduct, practices or representations, and/or through

2    the false or fraudulent alteration, deletion or insertion of programs or data.

3        213.    Microsoft has inserted or attached or knowingly created the opportunity for an

4    unknowing and unwanted insertion or attachment of a set of instructions or a computer program,

5    in the form of its browser extension, into Plaintiff Johnston's and Mississippi Subclass'

6    members' computer systems, with an intention to acquire, alter, damage, delete, disrupt, or

7    destroy affiliate cookie data and commissions that are the rightful property of Plaintiff

8    Johnston's and Mississippi Subclass Members.

9        214.    Plaintiff Johnston and Mississippi Subclass Members have an ownership interest

10   in the affiliate cookie data that the Microsoft Shopping browser extension has unlawfully

11   acquired, altered, damaged, deleted, disrupted, and/or destroyed. The extension is programmed

12   with computer instructions that are designed to acquire, alter, damage, delete, disrupt, or destroy

13   the affiliate cookie data of Plaintiff Johnston and Mississippi Subclass Members without their

14   authorization, in direction violation of the Mississippi Computer Crimes and Identity Theft Act.

15       215.    Microsoft neither sought nor obtained permission from (a) consumers of its

16   browser extension, (b) Plaintiff Johnston, or (c) Mississippi Subclass Members to add, alter,

17   damage, delete, or destroy the affiliate cookie data of Plaintiff Johnson's and Mississippi

18   Subclass Members residing on consumers' browsers. Likewise, Microsoft did not request or

19   receive permission to Plaintiff Johnson's and Mississippi Subclass' members' rightful affiliate

20   commissions for its own benefit.

21       216.    The Microsoft Shopping browser extension cookie-contaminating mechanism is

22   not disclosed in the applicable terms of service or privacy policy, or in any information provided

23   to consumers in the ordinary course of installing the extension.

24
    CLASS ACTION COMPLAINT  - 39

217.    As a direct result of Microsoft's unlawful scheme, Plaintiff Johnston and Mississippi Subclass Members have suffered significant financial losses, including substantial revenue from highly valuable commissions that were improperly diverted to Microsoft.

218.    Plaintiff Johnston and Mississippi Subclass Members seek compensatory damages, injunctive relief, and all other legal or equitable relief available under the Mississippi Computer Crimes and Identity Theft Act.

219.    Because Microsoft's conduct is willful and deceitful, Plaintiff Johnston and Mississippi Subclass Members seek punitive or exemplary damages, as available under Mississippi Computer Crimes and Identity Theft Act. Microsoft concealed the material fact that it was diverting affiliate commissions from creators to itself, depriving Plaintiffs and Mississippi Subclass Members of substantial commissions.

### TENTH CAUSE OF ACTION
**MISSISSOURI STATUTE AGAINST TAMPERING WITH COMPUTER DATA AND USERS**
**R.S.MO. § 569.095, § 569.099**
**(ON BEHALF OF PLAINTIFF MALCOLM AND THE MISSOURI SUBCLASS)**

220.    Plaintiff Malcolm re-alleges and incorporates by reference all factual allegations above as if fully set forth herein.

221.    Under the Missouri statute against tampering with computer data, R.S.Mo § 569.095, a person or entity is liable if it knowingly and without authorization:

(1) Modifies or destroys data or programs residing or existing internal to a computer, computer system, or computer network. . . .

(3) Discloses or takes data, programs, or supporting documentation, residing or existing internal or external to a computer, computer system, or computer network.

222.    Under the Missouri statute against tampering with computer data, R.S.Mo §

CLASS ACTION COMPLAINT  - 40

569.099, a person or entity is liable if it knowingly and without authorization:

>　　　(1)　　Accesses or causes to be accessed any computer, computer system, or computer network.

223.　Microsoft has deployed its browser extension to knowingly access and without authorization modify or destroy the affiliate cookie data of Plaintiff Malcolm and Missouri Subclass Members by diverting the affiliate commissions that rightfully belong to Plaintiffs and Missouri Subclass Members.

224.　Microsoft has deployed its browser extension to knowingly and without authorization take the affiliate cookie data of Plaintiff Malcolm and Missouri Subclass Members that is residing or existing internal to the Plaintiff Malcolm's and Missouri Subclass' members' computers.

225.　Microsoft has deployed its browser extension to knowingly and without authorization access the affiliate cookie data stored within Plaintiff Malcolm's and Missouri Subclass' members' computer systems.

226.　Plaintiff Malcolm and Missouri Subclass Members have an ownership interest in the affiliate cookie data that the Microsoft Shopping browser extension has unlawfully modified and/or destroyed. The extension is programmed with computer instructions that are designed to modify and/or destroy the affiliate cookie data of Plaintiff Malcolm and Missouri Subclass Members without their intent or authorization, in direction violation of R.S.Mo § 569.095 and § 569.099.

227.　Microsoft neither sought nor obtained permission from (a) consumers of its browser extension, (b) Plaintiff Malcolm, or (c) Missouri Subclass Members to add, alter, damage, delete, or destroy the affiliate cookie data of Plaintiff Malcolm and Missouri Subclass

BRESKIN | JOHNSON | TOWNSEND PLLC
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

Members residing on consumers' browsers. Likewise, Microsoft did not request or receive permission to Plaintiff Malcolm's and Missouri Subclass' members' rightful affiliate commissions for its own benefit.

228.    The Microsoft Shopping browser extension's cookie-contaminating mechanism is not disclosed in the applicable terms of service or privacy policy, or in any information provided to consumers in the ordinary course of installing the extension.

229.    As a direct result of Microsoft's unlawful scheme, Plaintiff Malcolm and Missouri Subclass Members have suffered significant financial losses, including substantial revenue from highly valuable commissions that were improperly diverted to Microsoft.

230.    Plaintiff Malcolm and Missouri Subclass Members seek compensatory damages, injunctive relief, and all other legal or equitable relief available under R.S.Mo § 569.095 and § 569.099.

231.    Because Microsoft's conduct is willful and deceitful, Plaintiff Malcolm and Missouri Subclass Members seek punitive or exemplary damages, as available R.S.Mo § 569.095, R.S.Mo § 569.099, and R.S.Mo § 537.525. Microsoft concealed the material fact that it was diverting affiliate commissions from creators to itself, depriving Plaintiff Malcolm and Missouri Subclass Members of substantial commissions.

### ELEVENTH CAUSE OF ACTION
**NEW JERSEY COMPUTER RELATED OFFENSES ACT AND COMPUTER CRIME LAW**
**N.J. STAT § 2A:38A-3, § 2C:20-25**
**(ON BEHALF OF PLAINTIFF KACHONIK AND THE NEW JERSEY SUBCLASS)**

232.    Plaintiff Doran re-alleges and incorporate by reference all factual allegations above as if fully set forth herein.

233.    Under the New Jersey Computer Related Offenses Act (CROA), N.J. Stat § 2A:38A-3, a person or entity is liable under the statute if it engages in:

CLASS ACTION COMPLAINT  - 42

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

(1)    The purposeful or knowing, and unauthorized altering, damaging, taking or destruction of any data, database, computer program, computer software or computer equipment existing internally or externally to a computer, computer system or computer network.

234.    Under the New Jersey Computer Crime Law (CCL), N.J. Stat § 2C:20-25, a person or entity is guilty of computer criminal activity if the person or entity purposely or knowingly and without authorization, or in excess of authorization:

(a)    Accesses any data, data base, computer storage medium, computer program, computer software, computer equipment, computer, computer system or computer network;

(b)    Alters, damages or destroys any data, data base, computer, computer storage medium, computer program, computer software, computer system or computer network . . .

235.    Microsoft has deployed its browser extension to knowingly access and without authorization alter, damage, delete, take, and/or destroy the affiliate cookie data of Plaintiff Doran and New Jersey Subclass Members, in order to both (a) execute its unlawful and deceitful scheme and (b) wrongfully control or obtain money, property, or data by diverting the affiliate commissions that rightfully belong to Plaintiff Doran and New Jersey Subclass Members.

236.    Microsoft has deployed its browser extension to knowingly access and without authorization add, alter, damage, delete, and/or destroy the affiliate cookie data of Plaintiff Doran and New Jersey Subclass Members, which resides on a covered computer system.

237.    Plaintiff Doran and New Jersey Subclass Members have an ownership interest in the affiliate cookie data that the Microsoft Shopping browser extension has unlawfully modified,

BRESKIN | JOHNSON | TOWNSEND PLLC
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

damaged, and/or destroyed. The extension is programmed with computer instructions that are designed to access, modify, damage, and/or destroy the affiliate cookie data of Plaintiff Doran and New Jersey Subclass Members without their intent or authorization, in direction violation of CROA and CCL.

238.    Microsoft neither sought nor obtained permission from (a) consumers of its browser extension, (b) Plaintiff Doran, or (c) New Jersey Subclass Members to add, alter, damage, delete, or destroy the affiliate cookie data of Plaintiffs and New Jersey Subclass Members residing on consumers' browsers. Likewise, Microsoft did not request or receive permission to Plaintiff Doran's and New Jersey Subclass' members' rightful affiliate commissions for its own benefit.

239.    The Microsoft Shopping browser extension's cookie-contaminating mechanism is not disclosed in the applicable terms of service or privacy policy, or in any information provided to consumers in the ordinary course of installing the extension.

240.    As a direct result of Microsoft's unlawful scheme, Plaintiff Doran and New Jersey Subclass Members have suffered significant financial losses, including substantial revenue from highly valuable commissions that were improperly diverted to Microsoft.

241.    Plaintiff Doran and New Jersey Subclass Members seek compensatory damages, injunctive relief, and all other legal or equitable relief available under the CROA and CCL.

242.    Because Microsoft's conduct is willful and deceitful, Plaintiff Doran and New Jersey Subclass Members seek punitive or exemplary damages, as available under CROA and CCL. Microsoft concealed the material fact that it was diverting affiliate commissions from creators to itself, depriving Plaintiff Doran and New Jersey Subclass Members of substantial commissions.

BRESKIN | JOHNSON | TOWNSEND PLLC
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

## TWELFTH CAUSE OF ACTION
### PENNSYLVANIA COMPUTER OFFENSES LAW
### 18 PA.C.S. § 7611
### (ON BEHALF OF PLAINTIFF KACHONIK AND THE PENNSYLVANIA SUBCLASS)

243.     Plaintiff Kachonik re-alleges and incorporates by reference all factual allegations above as if fully set forth herein.

244.     Under the Pennsylvania Computer Offenses Law, 18 Pa.C.S. § 7611, a person or entity is liable under the statute if it:

> (1)     accesses or exceeds authorization to access, alters, damages or destroys any computer, computer system, computer network, computer software, computer program, computer database, World Wide Web site or telecommunication device or any part thereof with the intent to interrupt the normal functioning of a person or to devise or execute any scheme or artifice to defraud or deceive or control property or services by means of false or fraudulent pretenses, representations or promises;
>
> (2)     intentionally and without authorization accesses or exceeds authorization to access, alters, interferes with the operation of, damages or destroys any computer, computer system, computer network, computer software, computer program, computer database, World Wide Web site or telecommunication device or any part thereof . . .

245.     Microsoft has deployed its browser extension to knowingly access and without permission alter, damage, delete, and/or destroy the affiliate cookie data of Plaintiff Kachonik and Pennsylvania Subclass Members, by diverting the affiliate commissions that rightfully belong to Plaintiffs and Pennsylvania Subclass Members.

246.     Microsoft has deployed its browser extension to knowingly access and without

CLASS ACTION COMPLAINT  - 45

1  permission add, alter, damage, delete, and/or destroy the affiliate cookie data of Plaintiff Kachonik

2  and Pennsylvania Subclass Members, which resides on a covered computer system.

3  247.  Plaintiff Kachonik and Pennsylvania Subclass Members have an ownership interest

4  in the affiliate cookie data that the Microsoft Shopping browser extension has unlawfully modified,

5  damaged, and/or destroyed. The extension is programmed with computer instructions that are

6  designed to access, modify, damage, and/or destroy the affiliate cookie data of Plaintiff Kachonik

7  and Pennsylvania Subclass Members without their authorization, in direction violation of the

8  Pennsylvania Computer Offenses Law.

9  248.  Microsoft neither sought nor obtained permission from (a) consumers of its browser

10  extension, (b) Plaintiff Kachonik, or (c) Pennsylvania Subclass Members to add, alter, damage,

11  delete, or destroy the affiliate cookie data of Plaintiff Kachonik and Pennsylvania Subclass

12  Members residing on consumers' browsers. Likewise, Microsoft did not request or receive

13  permission to Plaintiff Kachonik and Pennsylvania Subclass' members' rightful affiliate

14  commissions for its own benefit.

15  249.  The Microsoft Shopping browser extension's cookie-contaminating mechanism is

16  not disclosed in the applicable terms of service or privacy policy, or in any information provided

17  to consumers in the ordinary course of installing the extension.

18  250.  As a direct result of Microsoft's unlawful scheme, Plaintiff Kachonik and

19  Pennsylvania Subclass Members have suffered significant financial losses, including substantial

20  revenue from highly valuable commissions that were improperly diverted to Microsoft.

21  251.  Plaintiff Kachonik and Pennsylvania Subclass Members seek compensatory

22  damages, injunctive relief, and all other legal or equitable relief available under the Pennsylvania

23  Computer Offenses Law.

24

CLASS ACTION COMPLAINT  - 46

252.    Because Microsoft's conduct is willful and deceitful, Plaintiff Kachonik and Pennsylvania Subclass Members seek punitive or exemplary damages, as available under the Pennsylvania Computer Offenses Law. Microsoft concealed the material fact that it was diverting affiliate commissions from creators to itself, depriving Plaintiffs and Pennsylvania Subclass Members of substantial commissions.

**THIRTEENTH CAUSE OF ACTION**
**TEXAS BREACH OF COMPUTER SECURITY LAW**
**TEX. PENAL CODE § 33.02**
**(ON BEHALF OF PLAINTIFF FLETCHER AND THE TEXAS SUBCLASS)**

253.    Plaintiff Fletcher re-alleges and incorporates by reference all factual allegations above as if fully set forth herein.

254.    Under the Texas Breach of Computer Security Law, Tex. Penal Code §33.02, a person or entity is liable under the statute if it:

> (a) . . . knowingly accesses a computer, computer network, or computer system without the effective consent of the owner. . . .

> (b-1) . . . with the intent to defraud or harm another or alter, damage, or delete property, . . . knowingly accesses:

>> (1) a computer, computer network, or computer system without the effective consent of the owner . . .

255.    Microsoft has deployed its browser extension to knowingly access a computer system without the effective consent of Plaintiff Fletcher and Texas Subclass Members.

256.    Microsoft has deployed its browser extension with the intent to defraud or harm or alter, damage, or delete affiliate cookie data of Plaintiff Fletcher and Texas Subclass Members, and knowingly access a computer system without the effective consent of Plaintiff Fletcher and Texas Subclass Members.

CLASS ACTION COMPLAINT - 47

257.    Plaintiff Fletcher and Texas Subclass Members have an ownership interest in the affiliate cookie data that the Microsoft Shopping browser extension has unlawfully modified, damaged, and/or destroyed. The extension is programmed with computer instructions that are designed to modify, damage, and/or destroy the affiliate cookie data of Plaintiff Fletcher and Texas Subclass Members without their intent or permission.  Microsoft knowingly introduces this extension and in turn accesses consumers' computers through its browser extension, in direction violation of Texas Breach of Computer Security Law.

258.    Microsoft neither sought nor obtained permission from (a) consumers of its browser extension, (b) Plaintiff Fletcher, or (c) Texas Subclass Members to add, alter, damage, delete, or destroy the affiliate cookie data of Plaintiff Fletcher and Texas Subclass Members residing on consumers' browsers. Likewise, Microsoft did not request or receive permission to Plaintiff Fletcher's and Texas Subclass' members' rightful affiliate commissions for its own benefit.

259.    The Microsoft Shopping browser extension's cookie-contaminating mechanism is not disclosed in the applicable terms of service or privacy policy, or in any information provided to consumers in the ordinary course of installing the extension.

260.    As a direct result of Microsoft's unlawful scheme, Plaintiff Fletcher and Texas Subclass Members have suffered significant financial losses, including substantial revenue from highly valuable commissions that were improperly diverted to Microsoft.

261.    Plaintiff Fletcher and Texas Subclass Members seek compensatory damages, injunctive relief, and all other legal or equitable relief available under the Texas Breach of Computer Security Law.

262.    Because Microsoft's conduct is willful and deceitful, Plaintiffs and Texas

CLASS ACTION COMPLAINT  - 48

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

Subclass Members seek punitive or exemplary damages, as available under the Texas Breach of Computer Security Law. Microsoft concealed the material fact that it was diverting affiliate commissions from creators to itself, depriving Plaintiff Fletcher and Texas Subclass Members of substantial commissions.

### FOURTEENTH CAUSE OF ACTION
**VIRGINIA COMPUTER CRIMES ACT**
**VA. CODE § 18.2-152.1** *et seq.*
**(ON BEHALF OF PLAINTIFFS DOBBS, COLES, AND THE VIRGINIA SUBCLASS)**

263.    Plaintiffs re-allege and incorporate by reference all factual allegations above as if fully set forth herein.

264.    Under the Virigina Computer Crimes Act (VCCA), Va. Code § 18.2-152.1 *et seq.*:

(18.2-152.3) Any person who uses a computer or computer network, without authority and:

(1) Obtains property or services by false pretenses;

(2) Embezzles or commits larceny; or

(3) Converts the property of another is guilty of the crime of computer fraud. . . .

(18.2-152.4) It is unlawful for any person, with malicious intent, or through intentionally deceptive means and without authority, to:

(3) Alter, disable, or erase any computer data, computer programs or computer software . . .

265.     Microsoft has deployed its browser extension to access and without authority obtain affiliate commissions that is the rightful property of Plaintiffs and Virginia Subclass Members by using affiliate cookie data stored on Plaintiffs' and Virginia Subclass' members' computers.

CLASS ACTION COMPLAINT  - 49

266.    Microsoft has deployed its browser extension with malicious intent or through intentionally deceptive means and without authority to alter, disable, or erase the affiliate cookie data of Plaintiffs and Virginia Subclass Members, which resides on a covered computer system.

267.    Plaintiffs and Virginia Subclass Members have an ownership interest in the affiliate cookie data that the Microsoft Shopping browser extension has unlawfully modified, damaged, and/or destroyed. The extension is programmed with computer instructions that are designed to modify, damage, and/or destroy the affiliate cookie data of Plaintiffs and Virigina Subclass Members without their intent or authorization, in direction violation of the VCCA.

268.    Microsoft neither sought nor obtained permission from (a) consumers of its browser extension, (b) Plaintiffs, or (c) Virginia Subclass Members to add, alter, damage, delete, or destroy the affiliate cookie data of Plaintiffs and Virigina Subclass Members residing on consumers' browsers. Likewise, Microsoft did not request or receive permission to Plaintiffs' and Virginia Subclass' members' rightful affiliate commissions for its own benefit.

269.    The Microsoft Shopping browser extension's cookie-contaminating mechanism is not disclosed in the applicable terms of service or privacy policy, or in any information provided to consumers in the ordinary course of installing the extension.

270.    As a direct result of Microsoft's unlawful scheme, Plaintiffs and Virginia Subclass Members have suffered significant financial losses, including substantial revenue from highly valuable commissions that were improperly diverted to Microsoft.

271.    Plaintiffs and Virginia Subclass Members seek compensatory damages, injunctive relief, and all other legal or equitable relief available under the VCCA.

272.    Because Microsoft's conduct is willful and deceitful, Plaintiff Dobbs and Virginia Subclass Members seek punitive or exemplary damages, as available under the VCCA.

CLASS ACTION COMPLAINT  - 50

1  Microsoft concealed the material fact that it was diverting affiliate commissions from creators to

2  itself, depriving Plaintiffs and Viriginia Subclass Members of substantial commissions.

3  **FIFTEENTH CAUSE OF ACTION**
**WEST VIRIGINIA COMPUTER CRIME AND ABUSE ACT**
**W. VA. CODE § 61, ART. 3C**
**(ON BEHALF OF PLAINTIFF BRITT, LEATHERMAN, AND THE WEST VIRGINIA**
**SUBCLASS)**

6  273.     Plaintiff Britt and Leatherman re-allege and incorporate by reference all factual

7  allegations above as if fully set forth herein.

8  274.     Under the West Viriginia Computer Crime and Abuse Act, W. Va. Code § 61,

9  Art. 3C, a person or entity is liable under the statute if it:

10         (3C-4) (a) . . . knowingly and willfully, directly or indirectly, accesses or causes

11         to be accessed any computer, computer services, or computer network for the

12         purpose of: (1) Executing any scheme or artifice to defraud; or (2) obtaining

13         money, property, or services by means of fraudulent pretenses, representations,

14         or promises . . .

15         (3C-7) (a) . . . knowingly, willfully and without authorization, directly or

16         indirectly, tampers with, deletes, alters, damages or destroys or attempts to tamper

17         with, delete, alter, damage or destroy any computer, computer network, computer

18         software, computer resources, computer program or computer data or who

19         knowingly introduces, directly or indirectly, a computer contaminant into

20         any computer, computer program or computer network which results in a loss of

21         value of property. . . .

22  275.     Microsoft has deployed its browser extension to knowingly and willfully, directly

23  or indirectly, access the affiliate cookie data of Plaintiffs and West Virginia Subclass Members,

24

CLASS ACTION COMPLAINT  - 51

1   in order to both (1) execute its unlawful and deceitful scheme to defraud and (2) obtain money,

2   property, or services by means of fraudulent pretenses, representations, or promises by diverting

3   the affiliate commissions that rightfully belong to Plaintiffs and West Virginia Subclass

4   Members.

5          276.    Microsoft has deployed its browser extension to knowingly, willfully and without

6   authorization, directly or indirectly tamper with, delete, alter, damage or destroy the affiliate

7   cookie data of Plaintiffs and West Virginia Subclass Members, and has knowingly introduced,

8   directly or indirectly, this computer contaminant, which has resulted in a loss of value of

9   commissions that is the rightful property of Plaintiffs and West Virginia Subclass Members.

10         277.    Under the West Viriginia Computer Crime and Abuse Act, "computer

11  contaminant" is "any set of computer instructions that are designed to damage or destroy

12  information within a computer, computer system, or computer network without the consent or

13  permission of the owner of the information. They include, but are not limited to, a group of

14  computer instructions commonly called viruses or worms that are self-replicating or self-

15  propagating and are designed to contaminate other computer programs or computer data,

16  consume computer resources, or damage or destroy the normal operation of the computer." W.

17  Va. Code § 61-3C-3(4).

18         278.    Plaintiffs and West Virginia Subclass Members have an ownership interest in the

19  affiliate cookie data that the Microsoft Shopping browser extension has been designed to damage

20  and destroy within Plaintiffs' and West Viginia Subclass' Members computer systems without

21  their consent or permission. The extension is programmed with computer instructions that are

22  designed to contaminate the affiliate cookie data of Plaintiffs and West Virginia Subclass

23  Members without their intent or permission, thus meeting the definition of "computer

24  CLASS ACTION COMPLAINT  - 52

contaminant" under the West Viriginia Computer Crime and Abuse Act. Microsoft knowingly introduces this computer contaminant into consumers' computers through its browser extension, in direction violation of the Act.

279.   Microsoft neither sought nor obtained permission from (a) consumers of its browser extension, (b) Plaintiffs, or (c) West Virginia Subclass Members to add, alter, damage, delete, or destroy the affiliate cookie data of Plaintiffs and West Virginia Subclass Members residing on consumers' browsers. Likewise, Microsoft did not request or receive permission to Plaintiffs' and West Virginia Subclass' members' rightful affiliate commissions for its own benefit.

280.   The Microsoft Shopping browser extension's cookie-contaminating mechanism is not disclosed in the applicable terms of service or privacy policy, or in any information provided to consumers in the ordinary course of installing the extension.

281.   As a direct result of Microsoft's unlawful scheme, Plaintiffs and West Virginia Subclass Members have suffered significant financial losses, including substantial revenue from highly valuable commissions that were improperly diverted to Microsoft.

282.   Plaintiffs and West Virginia Subclass Members seek compensatory damages, injunctive relief, and all other legal or equitable relief available under the West Viriginia Computer Crime and Abuse Act.

283.   Because Microsoft's conduct is willful and deceitful, Plaintiffs and West Virginia Subclass Members seek punitive or exemplary damages, as available under the West Viriginia Computer Crime and Abuse Act. Microsoft concealed the material fact that it was diverting affiliate commissions from creators to itself, depriving Plaintiffs and West Virginia Subclass Members of substantial commissions.

BRESKIN | JOHNSON | TOWNSEND PLLC
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

### SIXTEENTH CAUSE OF ACTION
**WISCONSIN COMPUTER CRIMES LAW**
**WIS. STAT § 943.70**
**(ON BEHALF OF PLAINTIFF BLOTNICKI AND THE WISCONSIN SUBCLASS)**

284.    Plaintiff Blotnicki re-alleges and incorporates by reference all factual allegations above as if fully set forth herein.

285.    Under the Wisconsin Computer Crimes Law, Wis. Stat. § 943.70, a person or entity is liable under the statute if it willfully, knowingly and without authorization:

    (a)    Modifies data, computer programs or supporting documentation.

    (b)    Destroys data, computer programs or supporting documentation.

    (c)    Accesses computer programs or supporting documentation. . . .

286.    Microsoft has deployed its browser extension to knowingly, willfully, and without authorization access the affiliate cookie data of Plaintiff Blotnicki and Wisconsin Subclass Members by diverting the affiliate commissions that rightfully belong to Plaintiff Blotnicki and Wisconsin Subclass Members.

287.    Microsoft has deployed its browser extension to knowingly, willfully and without authorization, modify, delete, alter, damage or destroy the affiliate cookie data of Plaintiff Blotnicki and Wisconsin Subclass Members, which has resulted in a loss of value of commissions that is the rightful property of Plaintiff Blotnicki and Wisconsin Subclass Members.

288.    Plaintiff Blotnicki and Wisconsin Subclass Members have an ownership interest in the affiliate cookie data that the Microsoft Shopping browser extension has been designed to access, modify, damage and destroy within Plaintiff Blotnicki's and Wisconsin Subclass' members' computer systems without their authorization, in direction violation of the Wisconsin Computer Crimes Law.

CLASS ACTION COMPLAINT - 54

289.    Microsoft neither sought nor obtained permission from (a) consumers of its browser extension, (b) Plaintiff Blotnicki, or (c) Wisconsin Subclass Members to add, alter, damage, delete, or destroy the affiliate cookie data of Plaintiff Blotnicki and Wisconsin Subclass Members residing on consumers' browsers. Likewise, Microsoft did not request or receive permission to Plaintiff Blotnicki's and Wisconsin Subclass' members' rightful affiliate commissions for its own benefit.

290.    The Microsoft Shopping browser extension's cookie-contaminating mechanism is not disclosed in the applicable terms of service or privacy policy, or in any information provided to consumers in the ordinary course of installing the extension.

291.    As a direct result of Microsoft's unlawful scheme, Plaintiff Blotnicki and Wisconsin Class Members have suffered significant financial losses, including substantial revenue from highly valuable commissions that were improperly diverted to Microsoft.

292.    Plaintiff Blotnicki and Wisconsin Subclass Members seek compensatory damages, injunctive relief, and all other legal or equitable relief available under the Wisconsin Computer Crimes Law.

293.    Because Microsoft's conduct is willful and deceitful, Plaintiff Blotnicki and Wisconsin Subclass Members seek punitive or exemplary damages, as available under the Wisconsin Computer Crimes Law. Microsoft concealed the material fact that it was diverting affiliate commissions from creators to itself, depriving Plaintiffs and Wisconsin Subclass Members of substantial commissions.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully requests that the Court:

CLASS ACTION COMPLAINT  - 55

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

1    A.    Certify this case as a class action, and appoint Plaintiffs as Class Representatives

2    and appoint Class Counsel;

3    B.    Enter judgment in favor of Plaintiffs and the Classes;

4    C.    Enter injunctive and declaratory relief as is necessary to protect the interests of

5    Plaintiffs and the Classes, including to prevent the Microsoft Shopping browser extension from

6    taking credit for sales it did not originate;

7    D.    Award all actual, general, special, incidental, statutory, treble, punitive,

8    liquidated, and consequential damages and restitution to which Plaintiffs and the Classes are

9    entitled;

10    E.    Award disgorgement of monies obtained through and as a result of the wrongful

11    conduct alleged herein;

12    F.    Award Plaintiffs and the Classes pre- and post-judgment interest as provided by

13    law;

14    G.    Enter such other orders as may be necessary to restore to Plaintiffs and the

15    Classes any money and property acquired by Microsoft through its wrongful conduct;

16    H.    Award Plaintiffs and the Classes reasonable litigation expenses and attorneys'

17    fees as permitted by law; and

18    I.    Award such other and further relief as the Court deems necessary and appropriate.

19

20    //    //

21    //    //

22    //    //

23

24

CLASS ACTION COMPLAINT  - 56

1

## **DEMAND FOR JURY TRIAL**

2

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all

3

issues triable as of right.

4

DATED: February 24, 2025             Respectfully submitted,

5

**BRESKIN JOHNSON & TOWNSEND, PLLC**

6
By:  /s/ Cynthia Heidelberg
Cindy Heidelberg, WSBA #44121

7
600 Stewart Street, Suite 901
Seattle, WA 98101

8
(206) 652-8660 Fax (206) 652-8290
cheidelberg@bjtlegal.com

9

**MIGLIACCIO & RATHOD LLP**

10
Jason S. Rathod, Esq.*
Nicholas A. Migliaccio, Esq.*

11
412 H St N.E., Suite 302
Washington, D.C. 20002

12
Tel: (202) 470-3520
Fax: (202) 800-2730

13
jrathod@classlawdc.com
nmigliaccio@classlawdc.com

14

* Pro hac admission to be sought

15

16

17

18

19

20

21

22

23

24